Merrimack, }
Feb. 2, 1937. }

AMERICAN MOTORISTS INSURANCE CO. *v.* ALBERT RUSH *& a.*

GEORGE E. BRACKETT *v.* ALBERT RUSH.

MARY E. BRACKETT *v.* SAME.

384

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the insurance company and for the defendant in the tort actions.

*Robert W. Upton* and *Laurence I. Duncan (Mr. Duncan* orally), for George E. Brackett and Mary E. Brackett.

MARBLE, J. Since there is no suggestion that the insurance company was harmed by the denial of its motion to enjoin trial of the Brackett actions, the exception to the denial of this motion is overruled. It is the proper as well as the convenient method of procedure, however, to determine definitely by a transfer to this court the pre-

liminary question of coverage before trial of suits against an insured. *American &c. Insurance Co.* v. *Garage,* 86 N. H. 362, 364; *Sauriolle* v. *O'Gorman,* 86 N. H. 39, 49. See also *Gibbs* v. *Company,* 87 N. H. 19, 20; *Howe* v. *Howe,* 87 N. H. 338, 339; *Maryland Casualty Co.* v. *Martin, ante,* 346.

The tort actions will be considered first. According to the plaintiff's testimony he was driving his Dodge car on the day of the accident from his father's home in Georges Mills to his own home in Watertown, Massachusetts. His wife and a guest were seated in front with him, his son was asleep on the back seat, and a baby was lying in a hammock suspended from the roof of the automobile between the front and back seats. When he reached Henniker he stopped at the junction of the trunk lines there, where a stop sign had been installed, then proceeded straight across the square and down route 114 toward Manchester. His speed was approximately twenty miles an hour.

The defendant, who happened to be in the square at the time, claiming that the defendant did not stop at the sign or heed a signal to stop, started in pursuit. Driving at a speed of forty or forty-five miles an hour, he overtook the plaintiff within a short distance, blew his whistle, and then extended his right arm out the right window of his car, steering meanwhile with his left hand. He then "twisted his wheel" and "cut right in front of" the plaintiff "quick." There was a line of telephone poles on the plaintiff's right between the sidewalk and the road and a low retaining wall at the right of the sidewalk. In attempting to avoid a collision the plaintiff ran into one of the telephone poles, occasioning the injuries complained of.

This evidence fully justified a finding that the defendant was negligent and that his negligence was the legal cause of the accident. The defendant claims immunity, however, on the ground that in doing what he did he was acting in good faith and within the scope of his authority as an officer.

It is the general rule that police officers in making arrests are liable for injuries negligently inflicted on the person arrested as well as on innocent third persons. Cases on the subject are collected in 18 A. L. R. 197 and 39 A. L. R. 1306. This rule is in harmony with the trend of our decisions. The case of *Whidden* v. *Cheever,* 69 N. H. 142, on which the defendant relies, merely holds that a health officer while acting within the limits of his authority and in good faith is "not liable for errors of judgment." No question of negligence is involved. The discussion in *Robertson* v. *Monroe,* 79 N. H. 336, 339,

to which our attention is called, has reference to the default of a highway surveyor in the performance of a duty owed to the public.

"But the exemption of a municipal officer from liability in the performance of a public duty *does not extend to or include personal acts* which are negligent or tortious in their nature, and where the necessary elements of a personal liability concur or exist." 1 Dillon, Mun. Corp. (5th *ed.*), *s.* 440.

"We are of opinion that the principle which underlies the rule that public officers and other agencies of government are not liable for negligence in the performance of public duties goes no further than to relieve them from liability for non-feasance, and for the misfeasances of their servants or agents. For a personal act of misfeasance, we are of opinion that a party should be held liable to one injured by it, as well when in the performance of a public duty as when otherwise engaged." *Moynihan* v. *Todd*, 188 Mass. 301, 305.

This case is cited with approval in *Brown* v. *West*, 75 N. H. 463, 464. And in *Downes* v. *Hopkinton*, 67 N. H. 456, a case resembling *Moynihan* v. *Todd* on its facts, it is said: "If the surveyor was guilty of negligence in not giving seasonable notice of the blast to the plaintiff, the law affords her a remedy, if injured thereby, in an action against him."

The motions for directed verdicts were properly denied.

Since the liability of a police officer for his negligent conduct in making an arrest does not depend on the guilt or innocence of the person arrested, the trial court correctly instructed the jury that they were not deciding "whether Mr. Brackett did or did not stop at the stop sign." The further instruction that the jury might consider the conduct of Mr. Brackett at the stop sign as one of the circumstances bearing on the issue of the defendant's negligence was entirely favorable to the defendant.

The liability of the insurance company remains to be considered.

There can be no question but that the defendant at the time of the accident was using his car for an emergency purpose within the meaning of the emergency indorsement. Webster defines emergency as an unforeseen occurrence or combination of circumstances which calls for immediate action or remedy. The question here is not whether the offense, if committed, was serious enough to justify the defendant's pursuit of the offender but whether the use which the defendant made of his automobile was the sort of use that a police officer makes of a car when "immediate action" is called for.

Under the heading of "Exclusions" the policy expressly enumer-

ates eight uses or contingencies which the policy "shall not cover." If the company had intended also to exclude emergency use, it could have accomplished that end through the simple expedient of adding by way of indorsement a ninth item to the list of exclusions. It is significant that this was not done and that the phraseology adopted is that of an agreement not to use rather than that of an express exclusion from coverage.

The indorsement is to be read in connection with the only other indorsement attached to the policy. By the terms of this latter indorsement the insurer agrees to accept and include in the policy the provisions of chapter 54 of the Laws of 1927. The purpose of this enactment is "to induce motor-vehicle operators to provide security to persons injured by their negligence" (*American Mut. &c. Ins. Co.* v. *Company*, 87 N. H. 374, 376), and section 6, paragraph III of the act provides that no violation of the terms of the policy shall operate to defeat or avoid it.

After the incorporation of the provisions of chapter 54 in the policy it is then stated that the assured agrees to reimburse the company for any losses or payments the company suffers or makes under the policy provided any terms or conditions of the policy are violated by the assured. In view of these clauses we conclude that the emergency indorsement was merely a term of the policy, subject to the reimbursement provision in case of violation, and not an exclusion from coverage.

This conclusion makes it unnecessary to determine the extent to which a policy issued pursuant to Laws 1927, *c.* 54, must provide coverage.

*Exceptions overruled: judgments on the verdicts.*

ALLEN, C. J., concurred in the result: PAGE, J., was absent: the others concurred.